The opinion of the court was delivered by
Miller, J.
The defendant appeals from the sentence of death for murder. The record brings up ten bills of exception.
There was a motion to quash the indictment based on a challenge to the array of jurors for alleged irregularities in the drawing. It is *1195 claimed that one of three who acted as jury commissioner had vacated his office by accepting the position of deputy sheriff, that persons other than the commissioners suggested names and participated in the drawing, and that all the names of the jury drawn for the term were not in the box when the grand jury was selected by whom the indictment was found. Our examination has not impressed us with the force of these grounds, but it is enough in our view to dispose of the motion to quash, that the law requires that it should have been made earlier. The defendant was in custody on the charge of murder when and before the term of court begun; the counsel who made the motion had been employed on the preliminary examination and all the facts relied on to sustain the motion to quash were known to counsel before the indictment found on the 22d March, 1891; the term commencing on the 19th; the defendant arraigned on the 22d and the the motion to quash not filed until the 30th of the month. The requirement of the law, that motion to quash for supposed defects in drawing the juries, shall be made on the first day of the term, is to secure the prompt administration of justice and with that view to prevent the holding back of motions of this character preventing alleged irregularities easily corrected without serious delay or expense, if made at the beginning of the term. If the statute should be relaxed when the indictment is found after the term, as was the case here, although the accused was in custody and represented by counsel, cognizant of all the facts on which the motion to quash the venire was based, still the motion should not have been delayed until the 30th March, ten days after the term began and the day fixed for the trial. In any view we hold that to be too late. We,are fortified in this view too by the absence of any fraud practised on the accused or wrong that could arise from the alleged defect in drawing the jury. Act No. 44 of 1877, Secs. 10 and 11; 31 An. 369, 94; 5 An. 342.
Another bill, the second, is to the refusal of the court to permit the propounding to jurors on their voir dire the question as to-whether they would follow the instructions in the contingency of a charge as to circumstantial evidence. Hypothetical questions how the jury would or would not be influenced in certain supposed conditions of the testimony are calculated to mislead and confuse jurors, and to ask the juror whether he would respect the instructions of the court is certainly out of the usual course. In this case while the *1196 court declined to permit the question in the form counsel penned it, the charge as to the nature and force of circumstantial evidence was given with entire accuracy and great liberality to the defendant. Yfe think the question proposed was properly overruled.
Another bill (the fifth) denies the right of the State to close the argument when the defendant, as in this case, offered no testimony. There is nothing in this exception. 15 An. 557; 31 An. 91.
It was part of the case of the State to offer testimony that a dress found in a bureau removed from the house of the deceased belonged to her, and that there were blood stains on the dress. The defendant objected to the testimony of the physicians tending to show the blood stains. It is claimed that the search, soon after the crime was committed, developed no such dress, or at least fione that was stained; that the mother of the deceased produced the dress some time after the killing, and, exasperated as she was against the accused, the statement of the mother that she had found the stained dress in the bureau was not entitled to credit. All that is urged by the defence in this respect might well tend to depreciate the weight of the testimony as to the dress and the character of the stains, but the testimony was certainly admissible; and this disposes of the third and fourth exceptions, if, indeed, the last, referring to the introduction of the dress, is pressed.
The sixth and eighth bills may be considered together. One, made after trial and verdict, is to the refusal of the judge to appoint ■experts to examine and report as to the stains on the dress, whether ■or not caused by blood. The application was supported by affidavits ■of a number of witnesses to the effect, generally, that in the search for evidence of the crime at the house of the deceased soon after.the killing no such dress, or at least none that was stained, was found, and in other respects the affidavits tended to discredit the dress theory and the testimony of the mother of the deceased, a witness on the trial. The rule for the new trial assigned as some of the grounds that the search developing no such dress, the defence was surprised by the testimony in this respect, and that newly discovered evidence would show that when the body of the deceased was found the dress was not in her house, and would in other respects present the case in a more favorable light for the accused. We have weighed with care these bills and the able argument of defendant’s counsel in support of the applications. We think the proposition *1197 to give a new trial, or practically the same thing, to appoint the experts after the trial, is inadmissible. The time to appoint experts, if deemed necessary, was while the trial was in progress, and that was the time for offering the testimony suggested in the rule for new trial. The materiality of that testimony should, we think, have suggested itself when the State’s testimony on this branch of the ease was being given to the jury. The testimony claimed to be newly discovered, tended to repel that of the State as to the dress and the criminating stains. The witnesses suggested in the rule for new trial were at hand, some of them in court, had testified, but not in regard to dress or stains, because not asked, and as to those witnesses not present, the court would doubtless have compelled their attendance. Under these circumstances, we can not, on the ground of surprise or due diligence or any other ground, sanction the opening of the ease. The showing for the new trial is not, in our view, sufficient, and there is no ground, after trial and verdict, to appoint experts for obtaining and reporting information with a view to another trial. We think there is no merit in the sixth and eighth exceptions.
Prom an early period the law has provided that standing mute shall be no bar to the trial of the accused. In such case the court is directed to enter the plea of not guilty (Revised Statutes, Sec. 996). In this case the plea was made by counsel for the accused, but was entered of course under the direction of the court. It is not easy to appreciate that the plea entered necessarily under the eye and sanction of the court is vitiated because made through counsel. If the prisoner does not plead, the court is to order the plea to be entered. He does not plead in this case, and therefore the court in effect directs the plea to be entered. Utile per inutile non vitiatur would seem to apply to the circumstance that the counsel pleads, when if the counsel had not spoken at all the court would have caused the plea to be entered. Besides, in the argument on the rule for trial the bill recites the judge stated he had ordered the plea to be entered of his own motion, and he then, i. e. on this argument, directed the minutes amended so as to state the facts. The minutes were amended accordingly, and to this the defendant took a bill of exception, as well as to the refusal of the court to bear testimony that the minutes were correct as they stand, i. e. stating the plea by counsel of the accused. The right of the court to order an amendment of the minutes so as to conform to the facts and show this performance of *1198 an official duty we think is beyond question. 32 An. 1227; 39 An. 1105: 34 An. 881. If defendant had been permitted to offer the testimony suggested in the bill tending to show the judge had not directed the plea to be entered, this negative testimony would have encountered the corrected minutes and the direct and positive statement of the judge contained in the bill, that he did direct the entry of the plea, and that his recollection was clear and positive on the point, distinctly announced when the testimony on the point was proposed to be offered. We think the statement of the judge of a fact within his own knowledge pertaining to his official duty must be deemed conclusive and accepted as such by this court. In this view the proffered testimony was useless and properly excluded. This disposes of the seventh exception.
As to the ninth exception to the exclusion of testimony that a juror had been approached by the mother of the deceased and urged to find a verdict for the State, we concur with the judge that if offered to impeach his verdict it was inadmissible, and if for any other purpose it was irrelevant.
The tenth exception was to the overruling of the motion in arrest based on word “ prerent ” in the indictment instead of present. It is obvious this is a mere clerical error and did not vitiate the indictment. 38 An. 66; 35 An. 293.
Our consideration has embraced all the points in the numerous bills of exception, and the views expressed in this opinion we think embody all that need be said.
It is therefore ordered, adjudged and decreed that the sentence of the lower court be affirmed.