**13 So.2d 784**

**STATE v. HOOVER.**

**No. 36890.**

April 12, 1943.

Rehearing Denied May 17, 1943.

Tycer & Tucker, of Hammond, for defendant and appellant.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., Bolivar E. Kemp, Jr., Dist. Atty., of Amite, and Erlo J. Durbin, Asst. Dist. Atty., of Denham Springs (Joe A. Sims, of Hammond, of counsel), for State, plaintiff, appellee.

FOURNET, Justice.

The defendant, Jacob Hoover, having been convicted of shooting with intent to kill and sentenced to imprisonment in the

state penitentiary at hard labor for a period of not less than one nor more than three years, prosecutes this appeal, relying for the reversal thereof on certain errors alleged to have been committed during the course of his trial, to which timely objections were made and exceptions reserved.

Bill of Exceptions No. 1 was reserved when the defendant was compelled to go to trial, over his objection, on Tuesday, June 23, 1942, and is based on the fact that a copy of the indictment and list of the petit jurors were not served on him at least two entire days prior thereto, as required by Section 992 of the Revised Statutes (Section 602 of Dart's Criminal Statutes), the service having been made on him by a deputy sheriff of Tangipahoa Parish on Saturday, June 20, 1942, while he was in Biloxi, Mississippi.

■ The provisions of Section 992 of the Revised Statutes have application only where the person is charged with a capital crime or one "punishable with imprisonment at hard labor for seven years or upwards," and are not applicable to the case at bar since the crime for which defendant was tried and convicted (shooting with intent to kill) is only punishable "with or without hard labor for not more than three years." Act No. 44 of 1890, Section 765 of Dart's Criminal Statutes.

The next bill is equally without merit. It appears that when defendant's counsel propounded to one of the prospective jurors, Wade Neal, the question: "If the evidence shows that the defendant at the time believed himself to be in danger and if there was an apparent danger to him, his person or his life, and he thought he was in actual danger of bodily harm at the time, even though it might have been an apparent danger to him to be harmed, would you take that as the law and decide the case accordingly?" the district attorney objected on the ground that the test is not what the defendant thought, but what a reasonable man might think. The trial judge then stated to the prospective juror: "The Court will charge you that in the case of self-defense, where the defendant pleads self-defense, acted in self-defense, that any act or any crime he may have committed while acting in self-defense, if it was apparent to any reasonable man or person that his life was in great danger or he would receive great bodily harm that he had a right to act in self-defense, but on the other hand if it was not apparent that he would receive great bodily harm or probably lose his life then the Court will charge you he had not the right to act in self-defense. After hearing all the testimony and if you are convinced he did act in self-defense, it is your duty to acquit him, if on the other hand you believe and feel that he did not act in self-defense that there was no apparent danger to his life or would inflict great bodily harm from the assault then he did not act in self-defense. Do you understand that?"

■ We do not think this statement by the judge had the effect, as contended by defendant when he reserved a bill thereto, of hindering his right to examine the juror on his voir dire. The evidence on this bill, in our opinion, fails to disclose his

right of examination was curtailed in any manner by the action of the trial judge.

Prospective juror Leslie Hoover, a second cousin of the accused, was challenged for cause, and the defendant reserved Bill of Exceptions No. 3 when the judge excused him.

■ It is within the discretion of the trial judge to excuse a juror for cause. Article 345, Code of Criminal Procedure; State v. Anderson, 52 La.Ann. 101, 26 So. 781; State v. Kellogg, 104 La. 580, 29 So. 285; State v. Huff, 118 La. 194, 42 So. 771; State v. Caron, 118 La. 349, 42 So. 960; State v. Scarborough, 152 La. 669, 94 So. 204; State v. Chandler, 178 La. 7, 150 So. 386; and State v. Kifer, 186 La. 674, 173 So. 169, 110 A.L.R. 1017. To warrant a reversal of his decision in such instance, there must have been an abuse of his discretion. State v. Carricut, 157 La. 140, 102 So. 98; State v. Collier, 161 La. 856, 109 So. 516; and 1 Marr's Criminal Jurisprudence 701, Section 462.

■ We have reviewed the evidence touching on this bill and do not believe it warrants a disturbance of the judge's ruling. While this juror did say he believed he could sit on the jury and give both the defendant and the state a fair and impartial trial, he also said he was not certain what influence his relationship to the defendant might have on him, and, further, that he preferred not sitting on the case if he could be excused, since it might prove to be embarassing for him.

When the trial judge ruled prospective juror Dwight J. Parker was competent, despite the fact he testified he lived in Ward 2 of Tangipahoa Parish while he was listed on the venire list as a resident of Ward 4, the defendant reserved Bill of Exceptions No. 4.

■ Although the juror according to the evidence, lived in Ward 2, his home was near the dividing line between the second and fourth wards and he voted in Ward 4. The trial judge was convinced he was the only person of that name living in either of these two wards. Under these circumstances, we find no error in his ruling refusing to excuse this juror for cause.

Bills of Exceptions Nos. 5 and 6 were abandoned by defendant's counsel.

Bill of Exceptions No. 7 is levelled at the fact that while the defendant was testifying as a witness in his own behalf, he was handed what purported to be his criminal record and, over objection of his counsel, questioned in connection therewith.

■ While the record shows the objection to this type of questioning, it does not appear an exception was ever taken to the judge's ruling permitting it or that a bill was reserved. Consequently, under the express provisions of Article 502 of the Code of Criminal Procedure, we are powerless to review the alleged error. See, also, Articles 499 and 510 of the Code of Criminal Procedure; State v. Tiernan, 40 La.Ann. 525, 4 So. 477; State v. Salter, 48 La.Ann. 197, 19 So. 265; State v. Baptiste, 108 La. 586, 32 So. 461; State v. Gains, 169 La. 141, 124 So. 672; and 2 Marr's Criminal Juris-

prudence 1095, Section 709. In any event, "* * * a witness, whether he be the defendant or not, may be compelled to answer on cross-examination whether or not he has ever been indicted or arrested and how many times." Article 495 of the Code of Criminal Procedure. See, also, State v. Alexis, 45 La.Ann. 973, 13 So. 394; State v. Southern, 48 La.Ann. 628, 19 So. 668; State v. Posey, 137 La. 871, 69 So. 494; State v. Werner, 144 La. 380, 80 So. 596, 6 A.L.R. 1601; State v. Goodwin, 189 La. 443, 179 So. 591; and State v. Guillory, 201 La. 52, 9 So.2d 450, and the authorities therein cited.

The state did not seek to introduce the defendant's criminal record in evidence, but, rather, to use it as a memorandum from which questions relative thereto were formulated. In fact, the defendant, before answering some of these questions, asked for and was handed the record. Furthermore, the questions asked were not unreasonable, oppressive, or prejudicial.

The next eleven bills, reserved after the accused had been convicted, are all connected with his motion for a new trial, which is based (in addition to the complaints just disposed of) on the allegation that the jurors were never given the oath, as required by Article 361 of the Code of Criminal Procedure.

In support of this additional allegation, defendant's counsel sought to introduce in evidence the rough memorandum taken by the clerk during the course of the trial, from which she prepared the official minutes. This was objected to by the prosecuting attorney, who declared the official minutes only were admissible in evidence.

It is the settled rule of law that this court will be guided by the official minutes of the court as to what transpired during the trial of a case. State v. Lazarus, 39 La.Ann. 142, 1 So. 361; State v. Doyle, 42 La.Ann. 640, 7 So. 699; State v. Perkins, 45 La.Ann. 689, 12 So. 752; State v. Davis, 162 La. 500, 110 So. 733; State v. Pepper, 189 La. 795, 180 So. 640; and 1 Marr's Criminal Jurisprudence 587, Section 387. Facts incorrectly recorded in the minutes, however, may be corrected. State v. Leftwich, 46 La.Ann. 1194, 15 So. 411; State v. Oliver, 151 La. 659, 92 So. 217; State v. Futrell, 159 La. 1093, 106 So. 651; State v. Johnson, 171 La. 95, 129 So. 684; State v. Peyton, 193 La. 354, 190 So. 579; and 1 Marr's Criminal Jurisprudence 587, Section 389 et cetera.

When Mr. Tycer, one of defendant's counsel, placed his co-counsel, Mr. Tucker, on the witness stand in an effort to have the official minutes corrected by the elimination therefrom of the alleged erroneous statement that the jury was duly sworn, Mr. Tucker identified the rough memorandum sought to be introduced in evidence and explained the manner in which it had been obtained. Under cross-examination he stated Juror Bond had not been sworn in. Jurors Bond and Stringfield, testifying over the state's objection, stated they did not remember whether or not they had been properly sworn.

Through Mrs. Lida Morrison, chief deputy clerk of court for over 22 years and the official minute clerk, the state elicited

the information that the official minutes not only reflected what had actually transpired during the course of the trial, but that she had herself sworn the jurors. Explaining, she said: "I take my minutes in criminal cases on the sheet of paper the jurors are on and merely make a notation on my rough book so I will be sure to write it up in the proper place." The court reporter, Mrs. Gladys Davidson, testified she was present during the entire hearing and distinctly remembered the jurors were properly sworn in.

In an effort to rebut this testimony, defendant's other counsel, Mr. Tycer, took the witness stand and stated he distinctly remembered the oath had not been administered to the first accepted juror and he endeavored to contradict some of the statements of the deputy clerk and the court reporter.

In addition to all of this, we have the per curiam of the trial judge, wherein he states positively the oath was administered to the jurors when they were impanelled. Nothing in this evidence substantiates defendant's contention. Moreover, we do not think the defendant can, for the first time after verdict, in a motion for a new trial, object to the failure to swear the jury. This court has repeatedly held that defects in the form of an oath or in the swearing of a jury by an incompetent or unauthorized person can never be taken advantage of in a motion for a new trial. An acquittal by this jury would have been a good basis for the plea of autrefois acquit had the state sought to retry the defendant. The guarantee under our constitution,

Article 1, § 9, of a fair and impartial trial does not contemplate that an accused can take advantage of technical errors committed during the course of his trial while he sat idly by without some showing that the errors were prejudicial to his cause. It is our opinion, therefore, that the trial judge properly overruled the motion to correct the minutes.

Bill of Exceptions No. 19 was reserved to the overruling of the motion for a new trial (just covered) and presents nothing further for our consideration.

The next bill was reserved when the court overruled the defendant's motion in arrest of judgment. This motion was based on the failure to administer the oath to the impanelled jurors and the further allegation "That the defendant through his counsel requested that the instructions given by the Court to the jury be taken down and transcribed, was refused and that the jury had retired for deliberation before your mover or his counsel were aware that the said instructions had not been taken down and transcribed as requested. And that therefore, defendant had no opportunity to object and reserve a bill to that part of the judge's charge which stated, 'that there are only two verdicts which you may render in this case, one being; guilty as charged, and the other being; not guilty,' when as a matter of law there are several different verdict charges the jury could have rendered namely: 'Guilty as charged,' 'guilty of assault with a dangerous weapon,' 'guilty of assault and battery,' 'guilty of simple assault,' and 'not guilty.'"

■ There is no merit to this bill for, under the express provisions of the Code of Criminal Procedure, "A motion in arrest of judgment lies only for a substantial defect, patent upon the face of the record" (Article 517), ascertainable without an examination of the evidence. Article 518.

■ The matter of failure to swear the jurors was disposed of under the consideration of the motion for a new trial. Furthermore, although the judge, in signing this bill, does not include a per curiam, we find in the note of evidence attached thereto, the following comment by him as to the second ground urged: "Mr. Tycer, are you serious about this second allegation?" to which Mr. Tycer replied: "I will admit the Court *was not* asked for a written charge, but Mr. Tucker asked Miss Gladys to take it." (Italics ours.)

The last bill was reserved to certain remarks alleged to have been made by the district judge in passing sentence upon the defendant and the court's refusal to grant the defendant's request that the purported statement be taken down by the court reporter.

Defendant contends the judge's comment "Stand up, Mr. Hoover and be sentenced. Jake, you are a lucky man. You shot that man five times in self-defense," was an admission on his part that the defendant shot the prosecuting witness in self-defense and that it was therefore the judge's duty to grant the defendant a new trial. In his

per curiam the judge repudiates the statement thus attributed to him. He says his real comment was: "Jake, you are a lucky man. You *claim to have* shot that man five times in self-defense, but if he had died, you would have been tried for murder." (Italics ours.)

"The rule is that, where there is a conflict between the statement of defendant's counsel and that of the trial judge, the latter's statement of facts will be accepted in the absence of proof that the judge was in error." State v. Bourgeois, 158 La. 713, 104 So. 627, 629. See, also, State v. Euzebe, 42 La.Ann. 727, 7 So. 784; State v. Bowser, 42 La.Ann. 936, 8 So. 474; State v. Nash, 45 La.Ann. 974, 13 So. 265; State v. Prade, 50 La.Ann. 914, 24 So. 642; State v. Hopper, 114 La. 557, 38 So. 452; State v. Cavido, 134 La. 294, 64 So. 117; State v. Sandiford, 149 La. 933, 90 So. 261; State v. Mistich, 186 La. 174, 171 So. 841; State v. Tullos, 190 La. 184, 182 So. 321; and State v. Robertson, 196 La. 982, 200 So. 320.

■ Since defendant's counsel made no other effort to prove the judge was in error than to ask the court reporter to take down as true their version of what had been said by the judge, which is contradicted by him, there is no merit to this bill.

For the reasons assigned, defendant's conviction and sentence are affirmed.

ODOM, J., absent.